Penny **BAUMGARTNER**; **Margarita Collazo**; **Josefina Ramirez**; **Isabel Rivera Matos**; **Mildred Stern**; **Milton Taylor**; **Maria Ayala**; **Andrice Bartow**; **Doris Baskerville**; **Rosa Casiano**; **Arlene Catalano**; **Danna Clark**; **Miriam Colon**; **Madeline David**; **Brenda Erlston**; **Carmen Socorro Figueroa**; **Nanette Fisher**; **Josefa Garcia**; **Machelle Hill**; **Vickie Lynn Johnson**; **Samatha King**; **Michelle**

McCabe; Ana Elba Medina; Kimberly Moore; Joane Otero; Norberto Quinones; Maria Reyes; Ana Delia Rivera; Annette Rivera; Carmen Santos; Linda K. Smith; Tresa Stambaugh; Beverly Wallace; Kimberly J. White; Carla Williams; Myra Williams, for themselves individually and for all other persons similarly situated, Appellants,

v.

HARRISBURG HOUSING AUTHORITY; Dorsey Howard, Jr., as Director of the Harrisburg Housing Authority; Department of Housing and Urban Development; Michael A. Smerconish, as Regional Administrator of the United States Department of Housing and Urban Development.

No. 93-7295.

United States Court of Appeals, Third Circuit.

Argued Nov. 4, 1993.

Decided April 7, 1994.

As Amended April 26, 1994.

Laurence E. Norton, II (argued), Bettina A. Pearl, Central Pennsylvania Legal Services, Harrisburg, PA, for appellants.

Iwin W. Aronson, Ian J. Blynn (argued), Handler, Gerber, Johnston & Aronson, Camp Hill, PA, for appellees.

Richard Gutman, Carlise, PA, for amicus curiae ACLU of Pennsylvania.

Before: SLOVITER, Chief Judge, STAPLETON, Circuit Judge, and RESTANI *, Judge, United States Court of International Trade.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

In the order that is the subject of this appeal the district court denied the plaintiffs' request for attorney's fees on the ground that, as a matter of law, plaintiffs could not be considered to be "prevailing parties" under 42 U.S.C. § 1988 (Supp. III 1991). The court reasoned that the Supreme Court's decisions in *Farrar v. Hobby,* — U.S. —, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), and *Texas State Teachers Ass'n v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), require that a party must have obtained a judgment or entered into a consent decree or formal settlement before it could be considered to be "prevailing." The issue is a legal one over which our review is plenary.

### I.

*Facts and Procedural History*

On January 29, 1992, Penny Baumgartner and other named plaintiffs filed a class action brought on behalf of the residents of the Hall Manor Public Housing Project in Harrisburg ("the Tenants"). The Tenants alleged that the Harrisburg Housing Authority and its Executive Director, Dorsey Howard, Jr. (collectively "HHA"), as well as the United States Department of Housing and Urban Development and its Regional Administrator, Michael A. Smerconish (collectively "HUD"), violated the consultation requirements of the United States Housing Act of 1937, 42 U.S.C. § 1437l (1988 & Supp. IV 1992), and related federal regulations.

The dispute arose out of the 1989 application by HHA for federal funding through the Comprehensive Improvement Assistance Program, 42 U.S.C. § 1437l, a program designed to assist in the modernization of public housing. The Tenants alleged that HHA's plan, approved by HUD, provided for the construction of a central pay laundromat and the elimination of the Tenants' personal washing machines and the backyard poles they used to hang their clothes out to dry. The Tenants contended that because HHA failed to consult them before designing the plan and submitting it to HUD in conjunction with the application for funding, HHA violated the Housing Act and the federal regulations that require that public housing tenants be consulted and their views considered in the development of such plans. *See, e.g.,* 42 U.S.C. § 1437l(e)(1)(E)(i); 24 C.F.R. § 968.220 (1991). The Tenants grounded their cause of action on, *inter alia,* 42 U.S.C. § 1983 (1988), federal contract law and the Housing Act.

HHA moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on March 11, 1992 and HUD followed with a similar motion on April 2, 1992, alleging also lack of subject matter jurisdiction. The Tenants filed a brief in opposition to HHA's motion on April 14. On May 12, 1992, the district court granted the Tenants' motion for a 60-day stay of all proceedings on the basis of an expectation that the matter would be resolved without judicial involvement by that time.

Subsequently, HHA consulted with the Tenants on a new modernization plan that

* Hon. Jane A. Restani, sitting by designation.

the Tenants approved and that HUD accepted. In light of the fact that the new plan, which has since been implemented, met all of the Tenants' demands, the Tenants filed for a voluntary dismissal of their class action under Federal Rules Civil Procedure 41(a)(2) and 23(e) on July 10, 1992. App. at 256. On July 17, 1992, the district court granted a stay of all proceedings pending the determination of the motion to dismiss. Thereafter, on July 31, 1992, the district court granted the Tenants' motion for voluntary dismissal pursuant to Rule 41(a)(1).[1]

On August 31, 1992, the Tenants moved for attorney's fees under 42 U.S.C. § 1988[2] against HHA only. The district court denied the motion because the Tenants had not obtained relief in the form of "an enforceable judgment, a consent decree or a settlement," as it read *Texas Teachers* and *Farrar* to require. The court denied the Tenants' motion for reconsideration, and the Tenants filed a timely appeal.

## II.

### *Discussion*

 The predicate to an award of attorney's fees under 42 U.S.C. § 1988 is that the parties must have been "prevailing." The scope of that term has been the subject of considerable litigation. As the Supreme Court stated in *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987), "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." Obviously, a plaintiff who has received injunctive relief or who recovered a judgment of damages has prevailed, at least in part.

However, the Court recognized that the existence of a judgment is not a *sine qua non*

for status as a "prevailing party." Thus, in *Hewitt* the Court stated:

It is settled law, of course, that relief need not be judicially decreed in order to justify a fee award under § 1988. *A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment*—e.g., a monetary settlement or *a change in conduct that redresses the plaintiff's grievances.* When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.

*Id.* at 760–61, 107 S.Ct. at 2676 (emphasis added). *See also Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) ("Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated."); *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam) (noting language in legislative history that "parties may be considered to have prevailed when they vindicate rights ... without formally obtaining relief").

 Under this theory, generally referred to as the "catalyst theory," a plaintiff who can prove that the existence of the lawsuit accomplished the original objectives of the lawsuit without a formal judgment can be a "prevailing party". The paradigmatic situation for application of the "catalyst theory" has been when the defendants voluntarily changed their behavior to eliminate the complained-of conduct. *See, e.g., Pembroke v. Wood County,* 981 F.2d 225, 230–31 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993).

Use of the "catalyst theory" to determine whether a party seeking attorney's fees has prevailed is well-established in this court's

---

**1.** In a separate opinion, the district court held that it was not necessary to give notice to the class as required under Rule 23(e) because all the class members had received complete relief. The notice issue has not been raised on appeal.

**2.** The Civil Rights Attorney Fee Awards Act, 42 U.S.C. § 1988 (Supp. III 1991), reads in pertinent part:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

jurisprudence. *See, e.g., Wheeler v. Towanda Area Sch. Dist.,* 950 F.2d 128, 132 (3d Cir.1991) ("[C]ausation can be established through a 'catalyst' theory, where even though the litigation did not result in a favorable judgment, the pressure of the .lawsuit was a material contributing factor in bringing about extrajudicial relief."); *Clark v. Township of Falls,* 890 F.2d 625, 627 (3d Cir.1989) ("[I]f plaintiffs could establish that their suit was the catalyst for the changes, they were entitled to prevailing party status despite the fact that the district court had ruled against them."); *Ross v. Horn,* 598 F.2d 1312, 1322 (3d Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980) (same). This firmly-entrenched doctrine has also been recognized by each of the other eleven courts of appeals to have considered the issue.[3]

■ The Tenants allege that under the "catalyst theory" they were entitled to attorney's fees because their lawsuit was the impetus for HHA implementing a new plan on which the Tenants were consulted and of which they approved. Thus, they argue, they should be given the opportunity to show that they achieved a substantial goal of the litigation and that the lawsuit was a motivating force behind the change, thereby entitling them to attorney's fees under § 1988. As noted above, the district court denied plaintiffs an opportunity to show causation because it concluded that *Farrar* and *Texas Teachers* required that a party receive an enforceable judgment, consent decree or settlement in order to be considered to be a "prevailing party" under § 1988, thereby effectively abrogating the "catalyst theory." It is therefore incumbent upon us to examine those cases closely.

The matter at issue in *Texas Teachers* did not involve the "catalyst theory" at all. Instead, the issue concerned the "proper standard for determining whether a party has 'prevailed' in an action brought under certain civil rights statutes such that the party is eligible for an award of attorney's fees" under section 1988. *Texas Teachers,* 489 U.S. at 784, 109 S.Ct. at 1489. In that case, the plaintiffs, who were school teachers and their associations, had challenged a school regulation forbidding contact or discussion about employee organizations during the school day. Ultimately, the prohibition on communications by union representatives during school hours was upheld but the prohibition on teacher-to-teacher discussion of unions during the school day was held unconstitutional. The plaintiffs' request for attorney's fees was rejected, based on the requirement of the Court of Appeals for the Fifth Circuit that a plaintiff must prevail on the "central issue" in the litigation and achieve the "primary relief sought" to be eligible for an award for attorney's fees under section 1988. In *Texas Teachers,* the Supreme Court rejected such a test, explaining that "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Id.* at 790, 109 S.Ct. at 1492. Instead, the Court reiterated the rule that it had previously enunciated in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that the plaintiff need only succeed on a significant issue in the litigation and receive some of the benefit sought in bringing the suit.

In discussing whether "the plaintiff has crossed the threshold to a fee award of some kind," the Court stated in *Texas Teachers,* "[t]hus, at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." 489 U.S. at 792, 109 S.Ct. at 1493. In the course of this discussion, the Court continued, "[t]he touchstone of the prevailing

---

3. *See, e.g., Public Citizen Health Research Group v. Young,* 909 F.2d 546, 549 (D.C.Cir.1990); *Perket v. Secretary of Health & Human Servs.,* 905 F.2d 129, 132 (6th Cir.1990); *Guglietti v. Secretary of Health & Human Servs.,* 900 F.2d 397, 401 (1st Cir.1990); *Luethje v. Peavine Sch. Dist.,* 872 F.2d 352, 354 (10th Cir.1989); *Heath v. Brown,* 858 F.2d 1092, 1093 (5th Cir.1988); *Truax v. Bowen,* 842 F.2d 995, 997 (8th Cir. 1988); *Lads Trucking Co. v. Board of Trustees,* 777 F.2d 1371, 1375 (9th Cir.1985); *Gerena–Valentin v. Koch,* 739 F.2d 755, 758–59 (2d Cir. 1984); *Fields v. City of Tarpon Springs,* 721 F.2d 318, 321 (11th Cir.1983); *DeMier v. Gondles,* 676 F.2d 92, 93 (4th Cir.1982); *Dawson v. Pastrick,* 600 F.2d 70, 79 (7th Cir.1979).

party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792–93, 109 S.Ct. at 1494.

It is this language upon which the district court and the appellees rely for support for their conclusion that the premise of the "catalyst theory" was repudiated in *Texas Teachers.* We believe that interpretation puts a meaning into the Court's language which is inconsistent with its context. In fact, the decision of the Court was that plaintiffs "prevailed on a significant issue in the litigation and have obtained some of the relief they sought and are thus 'prevailing parties.'" *Id.* at 793, 109 S.Ct. at 1494. The Court's language about "material alteration of the legal relationship" between the parties related to the Court's admonition that mere technical victories could be too insignificant to qualify a party for "prevailing party" status. *Id.* at 792–93, 109 S.Ct. at 1494.

This Court had occasion to reexamine the vitality of the "catalyst theory" after *Texas Teachers* in *Wheeler v. Towanda Area School District,* 950 F.2d 128, 132 (3d Cir.1991). In that case, which arose under the Education of the Handicapped Act, the thrust of the plaintiffs' claim had been that the interpreter the school provided for their deaf daughter was not qualified. Plaintiffs did not succeed on any of their legal claims, but the Pennsylvania Secretary of Education did call for the use of an outside expert to assist the school district in locating a new interpreter.

The district court denied plaintiffs' request for attorney's fees because their lawsuit had not changed the behavior of the defendants in any way. Although we affirmed in a divided opinion, we did not reject the "catalyst theory." Instead, we stated that the test for determining whether a plaintiff was a "prevailing party" was a two-part one: "whether plaintiffs achieved relief and wheth-

er there is a causal connection between the litigation and the relief from the defendant." *Id.* at 131. We found that the Wheelers met the first part of the test because it required only that the plaintiff "achieve[ ] some of the benefit sought in a lawsuit, even though the plaintiff does not ultimately succeed in securing a favorable judgment." *Id.*

With regard to the second prong of the test, causation, we held that a plaintiff can establish causation either by obtaining a judgment, consent decree or a settlement that "change[s] the legal relations of the parties such that defendants [are] legally compelled to grant relief" as in *Texas Teachers, id.* at 132, or

> through a "catalyst" theory, where even though the litigation did not result in a favorable judgment, the pressure of the lawsuit was a material contributing factor in bringing about extrajudicial relief.

*Id.*

We affirmed the denial of attorney's fees in *Wheeler* because we concluded the plaintiffs had "not shown a causal connection under either theory between their lawsuit and the hiring of a new interpreter." *Id.* For our purposes, it is significant that this court did not construe *Texas Teachers* as derogating from the viability of the "catalyst theory." [4]

The district court also relied on the Supreme Court's later discussion in *Farrar* of "prevailing party" under section 1988. This is our first opportunity to consider whether the "catalyst theory" survives that decision.

The issue in *Farrar,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), like that in *Texas Teachers,* did not concern the "catalyst theory." Instead, the Court considered whether a civil rights plaintiff who was awarded nominal damages is a "prevailing party" under section 1988.

---

4. Other courts of appeals have recognized the viability of the "catalyst theory" even after *Texas Teachers. See Nunez–Soto v. Alvarado,* 956 F.2d 1, 3 (1st Cir.1992) ("[I]f it turns out that the plaintiff has secured neither damages nor injunctive relief, she will not be entitled to attorney's fees as a prevailing party ... unless she is able to show ... that her reinstatement was the result of

her lawsuit."); *Associated Builders & Contractors v. Orleans Parish Sch. Bd.,* 919 F.2d 374, 377 (5th Cir.1990) ("Federal courts have firmly established, however, that a civil rights plaintiff may 'prevail' in a case that is settled or otherwise becomes moot before the court renders a judgment on the merits.").

Following a jury trial on the plaintiffs' claim that the children's school operated by their decedent, Joseph Farrar, had been closed without due process, the court of appeals directed the award of nominal damages to plaintiffs because there had been a deprivation of the Farrars' civil rights. The court affirmed the failure to award compensatory damages because the plaintiffs had not proven that defendant's conduct was a proximate cause of any damages. Thereafter, the district court's award of attorney's fees was appealed. In reversing the award, the court of appeals held that the plaintiffs were not entitled to attorney's fees because it believed that a party who sought money damages of $17 million and received only one dollar was not a "prevailing party" under section 1988.

The Supreme Court disagreed, holding that "a plaintiff who wins nominal damages is a prevailing party under § 1988." However, the Court affirmed the judgment of the court of appeals not to award attorney's fees because in weighing the elements of what is an appropriate fee in light of the one dollar recovery, it concluded that no fee was appropriate.

HHA relies on the Supreme Court's statements, in the course of its discussion of the earlier section 1988 precedent, that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Farrar,* —— U.S. at ——, 113 S.Ct. at 573 (citations omitted). It also points to the Court's statement that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the plaintiff." *Id.* —— U.S. at ——, 113 S.Ct. at 574. It contends that *Farrar* synthesized all the past Supreme Court precedent relevant to section 1988 and established a uniform standard for all these cases.[5]

Once again, if taken out of context some of the language in *Farrar* emphasized by HHA

could be viewed as inconsistent with a "catalyst theory." However, in *Farrar,* because there was in fact a judgment, the Supreme Court did not have before it a situation where the "catalyst theory" might have been applicable. Therefore, any language implicating the "catalyst theory" was dictum. We believe it is not likely that the Supreme Court would overturn such a wide-spread theory without even once mentioning it, particularly when it was inapplicable to the case at hand.

*Farrar* is illustrative of cases where the plaintiff sought only money damages and was essentially unsuccessful. The Court's opinion in *Farrar* recognized that the plaintiff did not sue for a piece of paper stating that he was right and could receive $1; rather the plaintiff wanted a substantial sum of money. Because the *Farrar* plaintiff did not achieve in any way the ultimate goal of the litigation, the Court held that no fees should be awarded even though plaintiff was a "prevailing party."

Similarly, where the plaintiffs sought nonmonetary relief but achieved no benefit, the Court has held no fee is appropriate. Thus, in *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam), although plaintiff prisoners received a favorable declaratory judgment that correctional officials failed to apply proper procedural and substantive standards in refusing them permission to subscribe to a magazine, they got no benefit therefrom as one had died and the other had been released from the defendant prison. Therefore, no fees were appropriate. This result is similar to that reached in *Hewitt* where the Court held plaintiff was not entitled to attorney's fees because he had long been released from prison and could not get any redress from any changes in prison policy caused by his lawsuit. 482 U.S. at 763, 107 S.Ct. at 2677.

The view that the "catalyst theory" was *sub silentio* abrogated in *Farrar* is incompatible with the Supreme Court's approach to attorney's fees under section 1988. The Supreme Court has consistently emphasized

---

5. They point to the language "under the test we adopt today," *Farrar,* —— U.S. at ——, 113 S.Ct. at 574, as evidence of the Court's intention to disregard past inconsistent cases.

that it is the ends, not the means, that are determinative both of whether a plaintiff has prevailed and of the appropriate amount of fees. For example, in *Hewitt* the Court stated:

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct.

482 U.S. at 761, 107 S.Ct. at 2676. In its cases analyzing what is necessary to show that a party prevailed, the Supreme Court has eschewed technical considerations and instead has followed what is essentially a result-oriented approach.

HHA argues that unless the plaintiff achieves the ability to enforce its will on the defendant, it is not "prevailing." However, if the plaintiff already has achieved what it sought through the litigation, then there is no need for a judgment to enforce that which has been achieved, particularly when there is no possibility that there will be any need for enforcement in the future.

In rejecting the "central issue" test in *Texas Teachers,* Justice O'Connor commented that it would "[c]reat[e] ... an unstable threshold to fee eligibility [that] is sure to provoke prolonged litigation." 489 U.S. at 791, 109 S.Ct. at 1493. Similarly, "prolonged litigation" would be provoked if we were to accept HHA's proposal that litigation must be concluded by a court judgment before a party becomes eligible for attorney's fees. This would encourage parties to continue lawsuits in which they have already effectively achieved their goals, simply to obtain "prevailing party" status. Indeed, requiring plaintiffs to proceed with the litigation notwithstanding defendants' accession to plaintiffs' position would be inconsistent with plaintiffs' obligations under Rule 11. *See* Fed.R.Civ.P. 11.

Moreover, from a policy standpoint, if defendants could deprive plaintiffs of attorney's fees by unilaterally mooting the underlying case by conceding to plaintiffs' demands, attorneys might be more hesitant about bringing these civil rights suits, a result inconsistent with Congress' intent in enacting section 1988.

HHA argues that abrogation of the "catalyst theory" will eliminate the additional litigation that may be created by the determination of whether a lawsuit was the actual "catalyst." However, the factual question of what work was done and what result it produced is present in any determination of attorney's fees; while it may differ to some extent in a "catalyst" case, that is merely a question of degree and one which the district courts, in their factfinding expertise, deal with on a regular basis.

Most of the courts of appeals that have addressed the issue since *Farrar* have held that the catalyst doctrine was not overturned *sub silentio* by that decision. In its recent decision in *Craig v. Gregg County,* 988 F.2d 18 (5th Cir.1993), the Fifth Circuit discussed *Farrar* and commented that the plaintiff could prevail on a catalyst basis in an appropriate case. The court stated:

> A more precise reading of *Farrar,* however, might suggest that a party may prevail, even in the absence of a judgment, consent decree, or direct personal benefit "if its ends are accomplished as a result of the litigation." To make a *prima facie* case of prevailing party entitlement to fees in the absence of such relief, the plaintiff must therefore show that he achieved the goal intended by the lawsuit, and his lawsuit "caused the defendant to remedy the discrimination."

*Id.* at 21 (citations omitted). Although the court held in *Craig* that plaintiff's suit was not the "catalyst" in that case, in another case earlier that year it had in fact awarded fees under the "catalyst theory."

In that case, *Pembroke v. Wood County,* 981 F.2d 225, 230–31 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993), inmates had brought suit to improve conditions at their prison. The court held that they were "prevailing parties" under the "catalyst theory" because conditions at the prison improved even though they did not win a monetary or declaratory

judgment.[6] Similarly, in a case that is particularly relevant to arguments made by plaintiffs here, the Fifth Circuit stated that if a lawsuit that was made moot by defendant's voluntary conduct was the cause of that conduct, then plaintiffs could be "prevailing." *See Watkins v. Fordice,* 7 F.3d 453, 456 (5th Cir.1993).

The Tenth Circuit has taken the same position. In *American Council of the Blind, Inc. v. Romer,* 992 F.2d 249 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993), a case remanded to that court by the Supreme Court in light of *Farrar,* the Tenth Circuit held that its version of the "catalyst theory"[7] had survived *Farrar,* stating:

> Upon reconsideration herein as directed by the United States Supreme Court, this Court is of the opinion that there is a significant distinction in considering an attorney's fee under § 1988 as to the prevailing party prong between a case in which a judicial decision on the merits has been entered and a case in which there has been no such determination but some relief sought has been obtained. It does not appear that the decision in *Farrar* condemns the use of the "catalyst rule" in a nonjudgment on the merits situation.

*Id.* at 250–51.

Similarly, in *Paris v. HUD,* 988 F.2d 236 (1st Cir.1993), plaintiffs' challenge of HUD's tenant selection scheme that involved bypassing impoverished families on the low income housing waiting lists in favor of higher-income families was voluntarily dismissed by the plaintiffs after Congress had made their claims moot by passing a law that prohibited such plans. The First Circuit held that the plaintiffs were "prevailing parties" under the "catalyst theory," implicitly finding that the "catalyst theory" is good law even after *Far-*

*rar* although that case was not specifically discussed. *See id.* at 241.

Examination of recent decisions in other circuits shows that they follow the same trend. In *Citizens Against Tax Waste v. Westerville City School,* 985 F.2d 255, 257–58 (6th Cir.1993), plaintiffs dismissed their lawsuit after the defendant voluntarily made the changes the plaintiffs sought by their lawsuit. The Sixth Circuit held that plaintiffs were prevailing parties because the suit brought about the changes.

In a divided in banc opinion, the Fourth Circuit held otherwise by a 6–5 vote. *S–1 v. State Board of Education,* 21 F.3d 49 (4th Cir.1994) (in banc), *rev'g* 6 F.3d 160 (4th Cir.1993). In that case, an appeal by parents of their claim under the Education of the Handicapped Act was mooted by a partial settlement. The majority, adopting verbatim the panel's dissenting opinion, relied on *Farrar* to hold that the "catalyst theory" is no longer available. The opinion of what is now the in banc dissent reasoned as follows:

> If the one sentence in *Farrar* that specifies "enforceable judgment, consent decree, or settlement" is lifted out of context and treated as being all the Court said on the subject, it surely could be read as at least an oblique death-knell for the catalyst theory. But the context as defined by the actual issue before the *Farrar* Court and by what else the Court said on the subject belies any such drastic reading.
>
> Given the importance that the catalyst theory long has had in prevailing party doctrine under 42 U.S.C. § 1988, we would expect that if the Court intended to hold it no longer a viable theory it would address the issue head-on in a case in which it was dispositive. That was not so in *Farrar.* The theory's viability was not an issue in *Farrar,* where plaintiffs had obtained a

---

6. Under the Fifth Circuit's catalyst test the plaintiff must prove: "(1) that the goal of the law suit was achieved, and (2) that the suit itself caused the defendant to remedy the [complained of conditions]." *Pembroke,* 981 F.2d at 230 (quotations omitted). Then the defendant can rebut that showing by the plaintiff only if it can prove that its conduct was "wholly gratuitous." *Id.* (quotations omitted).

7. The Tenth Circuit's test under the "catalyst theory" requires a plaintiff to show "that [the] lawsuit is causally linked to securing the relief obtained, and that the defendant's conduct in response to the lawsuit was required by law." *Id.* at 250 (quotations omitted).

final judgment, and therefore had no need to invoke "catalyst" theory. . . .

Furthermore, several earlier decisions of the Court that were cited in *Farrar* as authoritative on the general issue of prevailing party status had either expressly or tacitly recognized the catalyst theory's viability, or reserved decision on its exact contours. We do not believe that had the Court intended in *Farrar* to abrogate a theory this well-established, it would have cited without comment these earlier decisions which, as a matter of course, recognized its existence and utilization.

6 F.3d 160, 166–67 (citations omitted) (footnote omitted). We continue to find this reasoning persuasive.

Our opinion in *Wheeler*, 950 F.2d at 132, explained that the discussion of "prevailing parties" in *Texas Teachers* was limited to those cases where plaintiffs sought to show causation based on a judgment, consent decree or settlement. Similarly, we now hold that the language in *Farrar* about the need to demonstrate a "consent decree, enforceable judgment or settlement" also does not speak to those cases where causation of a significant benefit sought by the lawsuit is shown through the "catalyst theory." Therefore, like the other courts of appeals to decide this issue, we conclude that the "catalyst theory" is still viable and may be applicable to this case.

HHA contends that even if this court decides that the catalyst doctrine is still good law after *Farrar*, the Tenants are procedurally barred from seeking attorney's fees, that public policy favors denying attorney's fees here, and that the Tenants were not a "prevailing party." We will address each of these contentions *seriatim*.

■ HHA contends that the Tenants should have filed for attorney's fees prior to making their motion to dismiss pursuant to 41(a)(1). For this assertion it relies upon *Santiago v. Victim Services Agency*, 753 F.2d 219 (2d Cir.1985), a case we believe inapposite.

*Santiago* did not concern a request by a *plaintiff* for attorney's fees for having achieved the result sought by the litigation.

It concerned instead a *defendant's* effort to obtain an award of attorney's fees under the claim that plaintiff had pursued frivolous litigation. The court of appeals held that defendant's request was barred because plaintiff had already dismissed the suit pursuant to Rule 41(a)(1). In any case, thereafter the Supreme Court held that the district court does not lose jurisdiction to decide collateral matters such as the award of attorney's fees under Rule 11 after a 41(a)(1)(i) dismissal. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990) ("motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree'") (*quoting Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170, 59 S.Ct. 777, 782, 83 L.Ed. 1184 (1939)). Thus, *Santiago* has been undercut and HHA's jurisdictional argument is not persuasive.

HHA next contends that public policy considerations favor denying any award of attorney's fees in this case. It notes that in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court stated that if there were "special circumstances" that would make an award unjust, an award of attorney fees might not be proper. HHA contends that this is such a case because it could not recoup the loss of the amount of the attorney's fees through taxes, and ultimately the tenants of low income housing will pay for the fees through reduced services. This is particularly unjust, it maintains, where, as here, the attorneys are legal services attorneys who have already been paid public funds.

■ It is premature to consider whether attorney's fees are appropriate in this case because the district court has not yet decided that issue. We note merely that the Court held in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), that representation by a nonprofit legal services organization does not bar a party from recovering attorney's fees under section 1988. Further, we held in *Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir.1983), that a party's ability to pay is not a "special circumstance," whether that party is a public

or private entity. The merits of any other basis for the HHA to claim existence of a "special circumstance" must be addressed to the district court in the first instance. *See Staten v. Housing Auth.,* 638 F.2d 599, 605 (3d Cir.1980) (remanding to the district court for a determination of whether there were any "special circumstances" for not ordering the state housing authority to pay fees).

Lastly, HHA contends that the Tenants were not the "catalyst" for its actions in altering the modernization plan. Because there was no determination by the district court as to whether the plaintiffs' suit was in fact the "catalyst" for the changes made by HHA, we will remand for the district court to make factual findings on that issue.

### III.

#### *Conclusion*

We hold that there is no legal impediment to application of the "catalyst theory" to show that plaintiffs were "prevailing parties" notwithstanding the absence of a judgment or consent decree. Plaintiffs should be given the opportunity to show that the thrust of their lawsuit was to require the HHA to follow the consultative regulations before embarking on a kitchen modernization program, and that HHA's voluntary abandonment of the modernization program initially planned and its consultation with the Tenants leading to an acceptable modernization program was the result of plaintiffs' lawsuit and mooted the need to continue therewith. We will therefore vacate the district court's judgment and remand for further proceedings consistent with this opinion.