Kirk **KILGOUR** and California Association of the Physically Handicapped, Chapter 50, Plaintiffs–Appellants,

v.

CITY OF PASADENA; Pasadena Tournament of Roses Assoc.; Bull, Stockwell & Allen, et al., Defendants–Appellees.

No. 93–55903.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1995.

Decided April 27, 1995.

As Modified on Denial of Rehearing July 24, 1995.

---

Stanley Fleishman, Fleishman, Fisher & Moest, Los Angeles, CA, for plaintiffs-appellants (Consuelo S. Woodhead, Stegman & Wise, Los Angeles, CA, with him on the briefs).

Barbara R. Gadbois, Gibbs, Giden, Locher, Fleming & Acret, Los Angeles, CA, for defendants-appellees (R. Scott Jenkins, Hahn & Hahn, Pasadena, CA, with her on the brief).

Before: CANBY and NOONAN, Circuit Judges, and SAMUEL P. KING,* Senior District Judge.

SAMUEL P. KING, Senior District Judge:

Kirk Kilgour and the California Association of the Physically Handicapped, Chapter

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

50 (collectively, "Kilgour") filed this action against the City of Pasadena, Pasadena Tournament of Roses Association, and Bull, Stockwell & Allen (collectively, "the City") alleging violations of 29 U.S.C. § 794(b), 42 U.S.C. § 12131 et seq., 42 U.S.C. § 1983, and various state statutes. The lawsuit settled a week after filing. Upon application for attorney fees, the trial court found that Kilgour's lawsuit was not a "significant catalyst" in achieving relief. Accordingly, the court awarded no fees. The court alternatively determined that even if Kilgour was a prevailing party, "special circumstances" existed to justify an award of no fees. Kilgour appeals the fee determination. We have jurisdiction pursuant to 28 U.S.C. § 1291, and reverse and remand.

## FACTUAL BACKGROUND

This lawsuit arose from renovations to the press box at Pasadena's Rose Bowl. In 1990, the City began planning renovations to the press box and its luxury suites. A controversy arose between the California Attorney General and the City regarding whether the planned renovations complied with state and federal disability access laws. Throughout the summer of 1992, the Attorney General and the City disagreed. The Attorney General maintained that the planned renovations were "obvious and fundamental" violations of Title 24 of the California Administrative Code, and threatened a temporary restraining order halting construction. In contrast, the City maintained that all Title 24 requirements were met. The respective positions were buttressed by conflicting opinions from the California Office of the State Architect. Although the Attorney General did not file suit, settlement discussions were ongoing. In early-September of 1992, the City contacted the Attorney General's special counsel in an effort to settle the dispute. The special counsel represented that a settlement proposal would be forthcoming.

On September 15, 1992, Kilgour filed the instant lawsuit. Kirk Kilgour is a former Olympic athlete who is now a quadriplegic. He is an independent sports announcer and a member of the UCLA Chancellor's Commission on Disabilities. Kilgour sought to enjoin use of the press box until the facility was brought into compliance with federal and state guidelines.

On September 18, 1992, the City and the Attorney General discussed settlement. Four days later, the City then met with Kilgour. The City and the Attorney General again discussed settlement on September 25, 1992. The City indicated to the Attorney General that it wanted to settle with the Attorney General on the same terms as with Kilgour. The City and Kilgour reached a tentative settlement agreement by the end of September. On October 2, 1992, the City and the Attorney General then orally agreed to settle their dispute on the same terms as in the City/Kilgour lawsuit. The City and the Attorney General executed a settlement agreement on October 29, 1992. A stipulated judgment between the City and Kilgour was executed and filed on November 5, 1992.

The stipulated judgment required the City to make many additional modifications to the press box by December 31, 1992. It provided for dismissal of the lawsuit without prejudice, and gave Kilgour the ability to enforce its terms by reopening the lawsuit if the City did not complete renovations. The judgment also allowed parties to seek attorneys' fees within 30 days. Subsequently both parties moved for fees.

After an evidentiary hearing, the trial court issued the order now on appeal. The court found that Kilgour was not a prevailing party because Kilgour was not a significant catalyst in achieving the renovations. The court found that "the matter would have been settled in as timely a fashion without [Kilgour's] lawsuit having ever been filed." Alternatively, the court held that "special circumstances" justified awarding no fees.[1] Kilgour appealed.

## DISCUSSION

### 1. Prevailing Party.

The primary issue is whether the trial court erred in determining that Kilgour was

---

1. The court also denied an award of fees to the City, finding the City's position to be frivolous. Accordingly, the court sanctioned the City under Fed.R.Civ.P. 11, and awarded Kilgour $12,970 for having to oppose the City's motion.

not a prevailing party because Kilgour's lawsuit was not a significant catalyst. "District court awards of attorney's fees under section 1988 are reviewed for abuse of discretion." *Corder v. Gates,* 947 F.2d 374, 377 (9th Cir. 1991) (citations omitted). "[T]he district court's fee award will be overturned if it is based on an inaccurate view of the law or a clearly erroneous finding of fact." *Id.* "[A]ny elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable *de novo.*" *Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1052 (9th Cir.1991) (citation omitted). Factual determinations underlying a prevailing party determination will not be set aside absent clear error. *Sablan v. Dep't of Fin. of N. Mariana Islands,* 856 F.2d 1317, 1324 (9th Cir.1988) (citations omitted).

■ In *Farrar v. Hobby,* — U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court held that obtaining an enforceable judgment of one dollar satisfies the prevailing party requirement (although obtaining only nominal damages bears heavily on a determination of the amount of attorneys' fees awarded). —— U.S. at ——, 113 S.Ct. at 574. Much is made of the following language from *Farrar:*

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by

modifying the defendant's behavior in a way that directly benefits the plaintiff.

—— U.S. at ——, 113 S.Ct. at 573 (citations omitted).

This circuit has not specifically addressed whether the quoted language from *Farrar* precludes a catalyst theory. Although the Fourth Circuit has held that a catalyst theory is no longer available to establish a plaintiff's status as prevailing party,[2] at least five other circuits have specifically held that the catalyst test survives *Farrar,* primarily because *Farrar* involved recovery on the merits.[3] We follow and adopt the authority indicating that *Farrar* does not preclude a catalyst test. A catalyst test is an alternate theory for determining the prevailing party if no relief on the merits is obtained. *See, e.g., Beach v. Smith,* 743 F.2d 1303, 1306 (9th Cir.1984) ("However, *even in the absence of a favorable judgment,* a litigant may be a prevailing party for purposes of an attorney fee award if his action was a 'catalyst' which motivated the defendant to provide the relief originally sought through litigation.") (emphasis added); *Exeter–West Greenwich Regional Sch. v. Pontarelli,* 788 F.2d 47, 50 (1st Cir.1986) ("cases have set out two standard tests for determining when a party shall be deemed 'prevailing' under § 1988.... The first we now call the 'merits' test. The second is already known as the 'catalyst' test.").

In this case, the trial court noted this specific language from *Farrar* and found "it is clear that the injunctive relief obtained by [Kilgour] in the stipulated judgment entered into by [Kilgour] and the City accomplished what [Kilgour] sought to achieve, in significant fashion." However, the court then proceeded to apply a catalyst test:

> The close question is thus not whether [Kilgour] achieved success under the 'gen-

---

2. *S–1 and S–2 v. State Bd. of Educ. of N.C.,* 21 F.3d 49, 51 (4th Cir.1994) (en banc) (adopting dissenting opinion of Judge Wilkinson in *S–1 and S–2 v. State Bd. of Educ. of N.C.,* 6 F.3d 160, 168–72 (4th Cir.1993), *cert. denied,* — U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994)).

3. *See Baumgartner v. Harrisburg Housing Authority,* 21 F.3d 541, 550 (3d Cir.1994); *Craig v. Gregg County, Texas,* 988 F.2d 18, 20–21 (5th Cir.1993); *Zinn by Blankenship v. Shalala,* 35

F.3d 273, 276 (7th Cir.1994); *Little Rock School Dist. v. Special School Dist. 1,* 17 F.3d 260, 263 n. 2 (8th Cir.1994); and *American Council of the Blind v. Romer,* 992 F.2d 249, 251 (10th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993). *Cf. Paris v. U.S. Dept. of Housing & Urban Development,* 988 F.2d 236, 238 (1st Cir.1993); *Citizens Against Tax Waste v. Westerville School,* 985 F.2d 255 (6th Cir.1993). The 11th Circuit noted the issue but did not reach it. *Cullens v. Georgia Dep't of Transp.,* 29 F.3d 1489, 1494–95 (11th Cir.1994).

erous formulation' [in *Farrar*]; it is whether their lawsuit was a 'catalyst'—a sufficiently influential factor in the City's decision to so modify the Press Box—to justify an award of attorney's fees.

Order of February 11, 1993, Excerpts of Record at 157. The court determined that "[a]s plaintiffs have not met their burden of showing that they were a 'significant catalyst,' plaintiffs are not the prevailing party in this action." *Id.* at 160.

▮ Kilgour obtained an enforceable stipulated judgment requiring the City to make substantial modifications to the Rose Bowl press box. Importantly, under the stipulation, Kilgour (not the California Attorney General) may enforce the terms. Kilgour retained the right to reopen the lawsuit if the City did not perform. Contrast this right with the separate agreement between the City and the Attorney General, in which the Attorney General covenants not to sue. Under *Farrar*, a "material alteration of the legal relationship between the parties" occurs when "the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." —— U.S. at ——, 113 S.Ct. at 574. Thus, Kilgour plainly meets *Farrar* and, accordingly, is a prevailing party. The trial court erred because it should have never reached the catalyst test in making the prevailing party determination.[4]

The City argues that Kilgour was not the prevailing party under *Farrar* because the stipulated judgment was not "on the merits," pointing out that it never admitted liability. The City, however, incorrectly interprets "on the merits" to mean an adjudication of liability. *Farrar* makes no distinction between full adjudication of liability and achievement of an enforceable consent judgment. *See Farrar*, —— U.S. at ——, 113 S.Ct. at 274 ("material alteration of the legal relationship between the parties" occurs when "the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant."). The City admits that it stipulated to an entry of judgment "for the sole purpose of providing [Kilgour] with a means of enforcing the settlement agreement."

## 2. Special Circumstances.

▮ The trial court also determined that even if Kilgour was a prevailing party, special circumstances justified an award of no fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) ("a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust") (citation and internal quotation marks omitted). The court based its determination primarily on its finding that "the matter would have been settled in as timely a fashion without [Kilgour's] lawsuit having ever been filed."[5]

---

4. A catalyst-type analysis can also factor into determining the extent of success. *Farrar* emphasized that "the *degree* of the plaintiff's success does not affect eligibility for a fee award.... Once civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiff's overall success goes to the reasonableness of a fee award[.]" —— U.S. at ——, 113 S.Ct. at 574 (citations and internal quotation marks omitted) (emphasis in original). *See, e.g., Wilcox v. Reno*, 42 F.3d 550, 555 (9th Cir.1994); *See also American Council for the Blind v. Romer*, 992 F.2d at 251 (ruling in dicta that "a reasonable attorney's fee would be no fee at all, for Plaintiffs' lawsuit did not cause the relief obtained").

5. The district court may have been misled by the declarations made by Rick Cole, Mayor of the City of Pasadena, and by Edmund F. Sotelo, Assistant City Manager, Urban Environment, for the City of Pasadena. Mayor Cole states that he was in office when the controversy was in full vigor. He declares "the instant law suit having been filed well after the City agreed to settlement with the Attorney General, had no impact whatsoever on the decision to make additional modifications to the Project." This declaration is made "under penalty of perjury" under the laws of the United States.

Edmund F. Sotelo likewise declares that he was "personally involved in managing and supervising the Rose Bowl Press Box Renovation Project." He states: "having reached agreement with the Attorney General's office well before the instant lawsuit, it is my opinion that this lawsuit did not contribute in any way to the City's design modifications to the project." The declaration is also made "under the penalty of perjury" under the laws of the United States.

These statements are inaccurate in two major respects. The City had not agreed to settlement with the Attorney General when the lawsuit was filed. The lawsuit did have an impact on the

Although some evidence in the record indicates that a resolution of the dispute between the Attorney General and the City was possible, nothing in the record supports the finding that the matter would have been settled in as timely a fashion—and on the same terms as in the stipulated judgment of October 29, 1992—without Kilgour's lawsuit. Substantial evidence indicates to the contrary. On September 15, 1992, when the instant suit was filed, no settlement between the City and the Attorney General was in place; the City was awaiting a proposal from the Attorney General. The evidence indicates that the Attorney General was making strenuous demands that, if not met, would have resulted in a lawsuit on behalf of the State of California. Evidence also indicates that Kilgour's demands on behalf of the disabled community were less stringent in certain terms than demands by the Attorney General—ironically, leading to a quicker resolution of the matter. Kilgour's lawsuit seeking an immediate injunction at the beginning of the UCLA football season, within months of the 1993 Rose Bowl and 1993 Super Bowl games, triggered settlement. Given the evidence in the record, no special circumstances exist to justify an award of no fees. Kilgour achieved substantial success and counsel should receive a reasonable fee award.

## CONCLUSION

Kilgour obtained a stipulated judgment and, under *Farrar*, was therefore a prevailing party. Special circumstances do not exist justifying an award of no fees. This matter is REVERSED and REMANDED for a determination of a reasonable fee.

decision to make modifications. In addition to being inaccurate in those substantial ways, the declarations were highly material to the question

before the district court of whether the plaintiff was entitled to counsel fees.