JAN R. SMITH CONSTRUCTION
COMPANY, a Georgia
corporation, Plaintiff,

v.

DEKALB COUNTY, a political
subdivision of the State of
Georgia, Defendant.

Civil Action No. 1:97–CV–3208–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 9, 1998.

Valle Simms Dutcher, Southeastern Legal Foundation, Inc., Atlanta, GA, Robert Jesse Proctor, Proctor Felton & Chambers, Atlanta, GA, for Plaintiff.

William Jacob Cobb, David F. Walbert, Walbert & Mathis, Atlanta, GA, Jonathan A.

Weintraub, Office of DeKalb County Attorney, Decatur, GA, for Defendant.

### *ORDER*

MOYE, District Judge.

Plaintiff Jan R. Smith Construction Company filed this suit seeking to enjoin enforcement of the provisions of Defendant DeKalb County's affirmative action program relating to contracting and participation therein by minority and women business enterprises. After the case was filed, Defendant voluntarily suspended the programs at issue. This Court granted Defendant's motion to dismiss, finding that Plaintiff lacked standing to pursue the case. The case is now before the Court on Plaintiff's motion for attorney's fees pursuant to 42 U.S.C. § 1988. For the reasons stated herein, the motion is GRANTED in part and DENIED in part.

### BACKGROUND

During the 1980's, DeKalb County adopted an affirmative action program which set minimum annual participation goals for Minority Business Enterprises and Women Business Enterprises in all contracts. In March, 1997, Defendant undertook a substantive review of its affirmative action program to determine if the policies were in conformance with developing law. Despite recommendations to the DeKalb County Board of Commissioners that the program be reevaluated, that a disparity study be conducted, and that the program be suspended or repealed, no action was taken.

On October 24, 1997, Plaintiff filed this suit seeking a permanent injunction prohibiting enforcement or application of Defendant's affirmative action program pursuant to 42 U.S.C. § 1983 and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

The DeKalb County Board of Commissioners (Board) was served with the complaint at its October 28, 1997 meeting. Since consideration of the affirmative action program was not on the agenda, the Board suspended the rules to permit consideration of and action on the program. The Board adopted a resolution "to suspend the current Affirmative Action Program for Minority Contracting pending a disparity study; to ask the CEO to suspend the 10% minority preference that is (used) in purchasing procedures; and to keep the remainder of the Affirmative Action Program, besides contracting, in place." The motion adopted by the Board was immediately put into effect by the Chief Executive Officer. On November 12, 1997, the Board authorized the Chief Executive Officer to solicit proposals for conducting a disparity study.

At the same time this suit was filed, on October 24, 1997, Plaintiff filed a companion suit against the individual DeKalb County Commissioners, seeking monetary damages from them in their individual capacities. The complaint was never served on the defendants, and the suit was voluntarily dismissed by Plaintiff on October 29, 1997.

On November 19, 1997, David Walbert, attorney for Defendant, faxed a letter to Robert Proctor, attorney for Plaintiff. In the letter, Walbert agreed to recommend a settlement to the Board. The letter was in response to telephone conversations during which Walbert and Proctor discussed and agreed to certain terms of settlement, including that Plaintiff would dismiss the suit and Defendant would provide certain information to Plaintiff. The letter indicated the county's willingness to discuss attorney's fees but objected to the amount of $20,000 which had been proposed by Proctor. The letter requested additional information relating to the reasonableness of the proposed amount of fees and further suggested that, if necessary, matters relating to the merits of the case be settled, leaving the amount of fees open for later resolution, possibly through arbitration.

In response, on November 19, 1997, Proctor faxed a letter to Walbert. Proctor stated that "[e]verything looks good ... except with regard to attorney's fees." Proctor indicated that he was not willing to settle the case without settling the amount of attorney's fees and that he was not interested in arbitration. Proctor refused to provide "unedited time sheets" but stated that he had a total of 36 hours at the hourly rate of $300.00, that Brad Hutchins had a total of 23.65 hours at the hourly rate of $125.00, that Valle Simms Dutcher had a total of 18.5 hours at the

hourly rate of $170.00, and that the out-of-pocket expenses were $1,001.33. Anticipating an additional $2,000 in fees and expenses, Proctor stated that his proposed $20,000 amount was "a firm number." Proctor further noted that he had removed from his calculations "any incremental time relating to the complaint against the commissioners individually."

On November 20, 1997, Walbert faxed a letter to Proctor again suggesting that the matters be bifurcated. Walbert suggested that it was "at best unseemly . . . to force substantive litigation on the court because of a purely ancillary question about attorneys' fees."

In response, on November 20, 1997, Proctor faxed Walbert a letter stating that there was no basis for a settlement.

Defendant filed a motion to dismiss the complaint on December 1, 1997, which the Court granted on April 23, 1998, finding that Plaintiff did not have standing as its allegations of future injury were too speculative and hypothetical.

On May 18, 1998, Plaintiff filed the motion for attorney's fees and expenses which is now before the Court. Plaintiff contends it is the prevailing party and is therefore entitled to recover a full compensatory fee for all hours reasonably · expended on this litigation. Plaintiff further contends its lead attorney should be compensated at his current hourly rate of $275 per hour rather than his prior hourly rate of $250 per hour to compensate for the delay in receiving payment. Plaintiff contends that all hours expended, including time spent on the companion suit that was dismissed before service, should be compensated as the results obtained by the litigation were excellent in that everything Plaintiff sought has been accomplished.

Defendant contends Plaintiff is not a prevailing party as the case was dismissed by the Court because Plaintiff lacked standing to pursue the claims and that Plaintiff is not entitled to an award of attorney's fees. Defendant contends Plaintiff is not entitled to recover either fees or expenses for any efforts relating to the companion suit as none of the relief sought in that suit was obtained.

Defendant further contends that even if Plaintiff is deemed a prevailing party under the catalyst theory, recovery of attorney's fees would be unjust because of the special circumstances relating to Defendant's offer of settlement and Plaintiff's refusal to negotiate by insisting upon an unreasonable fee amount. Defendant also contends the special circumstances relating to Plaintiff's filing of the companion case would make recovery of attorney's fees unjust. Finally, Defendant contends that Plaintiff has failed to show that the hourly rates are reasonable, that the time spent was reasonable, or that the expenses were reasonably incurred.

## LEGAL STANDARD AND ANALYSIS

■ "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. "[A] prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render'" *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 94–1011, p. 4 (1976)). In determining whether a party is entitled to attorney's fees pursuant to § 1988, a district court must first determine whether the party is a "prevailing party." *Id.* at 433, 103 S.Ct. 1933. If the party meets this threshold determination, the court must then "determine what[, if any,] fee is 'reasonable.'" *Id.*

### I. *Prevailing Party*

Although the Supreme Court has never upheld an award of attorney's fees for a plaintiff who had obtained neither a judgment nor a consent decree nor a settlement, the Court has repeatedly stated that a party need not have a formal judgment to be considered a "prevailing party." *See, e.g., Hewitt v. Helms*, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) ("A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment—*e.g.*, a monetary settlement or a change in conduct that redresses the plain-

tiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor."); *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933 (The standard for determining whether a plaintiff meets the statutory threshold of being a "prevailing party" is a "generous" one: "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."); *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) ("Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated."); *Hanrahan v. Hampton,* 446 U.S. 754, 756–57, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) ("[A] person may in some circumstances be a 'prevailing party' without having obtained a favorable 'final judgment following a full trial on the merits.'"). In support of these statements, the Court relied on the legislative history of § 1988. *Maher,* 448 U.S. at 129, 100 S.Ct. 2570 ("[T]he Senate Report expressly stated that 'for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.' S.Rep. No. 94–1011, p. 5 (1976)[, U.S.Code Cong. & Admin. News 1976, pp. 5908, 5912]."); *Hanrahan,* 446 U.S. at 757, 100 S.Ct. 1987 (citing H.R.Rep. No. 94–1558, p. 7 (1976) and S.Rep. No. 94–1011, p. 5, U.S.Code Cong. & Admin. News 1976, pp. 5908, 5912 (1976)).

■ As a result of the Supreme Court's statements, the Eleventh Circuit has long recognized that a plaintiff may be considered the prevailing party for purposes of an award of attorney's fees even in the absence of judicial relief if he or she can show that the "lawsuit was a substantial factor or a significant catalyst in motivating the defendants to end their unlawful behavior." *Royal Crown Cola Co. v. Coca–Cola Co.,* 887 F.2d 1480, 1486 (11th Cir.1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990). "[A] party may be considered to be 'prevailing' if the litigation successfully terminates by a consent decree, an out-of-court settlement, a voluntary cessation of the unlawful practice by the defendant, or other mooting of the case where the plaintiff has vindicated his right." *Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir.1985). "This is true even where the remedial action moots the lawsuit before trial and the plaintiff voluntarily dismisses the suit." *Id.* "The prevailing party test is ... whether plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought in a manner desired by litigation." *Id.* (internal quotation marks omitted). Likewise, the catalyst theory was recognized by all of the other circuits. *Baumgartner v. Harrisburg Housing Authority,* 21 F.3d 541, 545 and n. 3 (3rd Cir. 1994) (citing cases).

■ In its most recent effort to define who is a "prevailing party," however, the Supreme Court used language which has called into question the continuing validity of the catalyst theory. *Farrar v. Hobby,* 506 U.S. 103, 111–13, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The Court, throughout much of the opinion, continued to describe "prevailing party" in the broad terms it had previously used, often citing the same cases which gave rise to the catalyst theory: (1) Under the Court's "generous formulation of the term, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," *id.* (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933); (2) The plaintiff must "prove 'the settling of some dispute which affects the behavior of the defendant towards the plaintiff,'" *id.* at 110, 113 S.Ct. 566 (quoting *Hewitt,* 482 U.S. at 761, 107 S.Ct. 2672); (3) "'To be considered a prevailing party within the meaning of § 1988,' ... 'the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant,'" *id.* at 111, 113 S.Ct. 566 (quoting *Texas State Teachers Assn. v. Garland Indep. School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)); (4) "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim," *id.* Some of the language of the opinion, however, sug-

gests that a "prevailing party" must have an enforceable judgment, consent decree, or settlement: (1) A prevailing plaintiff "must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement," *id.* (citing *Maher*, 448 U.S. at 129, 100 S.Ct. 2570); (2) "Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement," *id.* (citing *Hewitt*, 482 U.S. at 764, 107 S.Ct. 2672); (3) Although "a plaintiff who wins nominal damages is a prevailing party under § 1988[,] ... a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party," *id.* at 112, 113 S.Ct. 566; (4) "No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant," *id.* at 113, 113 S.Ct. 566.

Since *Farrar*, the Eleventh Circuit has had no opportunity to address the continuing validity of the catalyst theory. *Cullens v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1495 (11th Cir.1994). Of the circuits which have addressed the issue, all except the Fourth Circuit have upheld the continued validity of the theory.

In September 1993, a panel of the Fourth Circuit upheld the continued validity of the catalyst theory. *S–1 By and Through P–1 v. State Bd. of Educ. of N.C.*, 6 F.3d 160 (4th Cir.1993), *vacated* (Oct. 21, 1993). Rehearing *en banc* was granted, however, and in April 1994, the *en banc* court held that "[a] person may not be a 'prevailing party' plaintiff under 42 U.S.C. § 1988 except by virtue of having obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought in a § 1983 action." *S–1 and S–2 v. State Bd. Of Educ.*, 21 F.3d 49 (4th Cir.), *cert. denied*, 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). The seven judge majority adopted the dissenting panel opinion and the six judge minority adopted the majority panel opinion. *Id.* at 51. The *en banc* majority agreed with the panel dissent that "[t]he language of *Farrar* is plain" and that allowing the continued validity of

the catalyst theory would render the statements in *Farrar* meaningless. *S–1 By and Through P–1*, 6 F.3d at 168. The panel dissent, adopted by the *en banc* majority, further indicated that "the problems with [the catalyst] theory are prodigious," *id.* at 170, specifically mentioning: (1) the catalyst theory "conflicts with the plain language of § 1988 itself," explaining that "[s]ection 1988 allows awards of reasonable attorneys' fees to a 'prevailing party,' not simply to anyone who influences a change in behavior or policy," *id.;* (2) the catalyst theory "ignores the Supreme Court's recent decisions," adding that the *Hewitt* opinion did not endorse the catalyst theory but "specifically reserved judgment" on the issue and that *"Farrar* merely clarified *Hewitt* by stressing that a voluntary change in conduct must be formalized in a legally enforceable settlement agreement to transform a plaintiff into a prevailing party for purposes of § 1988," *id.* at 170–71; (3) the catalyst theory "engenders confusion and unnecessary litigation" in that it provides "only criteria that invite further litigation" whereas *"Farrar*'s clear rule ensures that parties deserving attorneys' fees will obtain them without forcing district courts to untangle a web of supposed causal connections to determine whether a party prevailed," *id.* at 171–72; and (4) the catalyst theory "discourages public officials from taking initiatives to revise outmoded ordinances or to improve institutional conditions, because such theory expressly recognizes 'voluntary actions taken by a defendant' as a proper basis for a fee award" and "empowers courts to award fees for any change in behavior that occurs after the filing of a lawsuit, whether or not the court could have ordered that change in conduct" and thereby "provides incentives for filing marginal, even frivolous, lawsuits," *id.* at 172. The *en banc* dissent, on the other hand, believed that "[g]iven the importance that the catalyst theory long has had in prevailing party doctrine under 42 U.S.C. § 1988, we would expect that if the Court intended to hold it no longer a viable theory it would address the issue head-on in a case in which it was dispositive." *Id.* at 166. The panel opinion, adopted by the *en banc* dissent, noted that "[t]he Court never mentioned the catalyst theory, and the

passage upon which the State relies [to suggest that the theory is no longer viable] occurs, as dicta, in a general discussion of 'prevailing party' status," *id.* at 167, adding that "several earlier decisions of the Court that were cited in *Farrar* as authoritative on the general issue of prevailing party status had either expressly or tacitly recognized the catalyst theory's viability, or reserved decision on its exact contours," *id.* (citations omitted).

The Third Circuit agreed with the Fourth Circuit *en banc* dissent and held that "there is no legal impediment to application of the 'catalyst theory' to show that plaintiffs were 'prevailing parties' notwithstanding the absence of a judgment or consent decree." *Baumgartner,* 21 F.3d at 551. The court initially noted that "[t]he issue in *Farrar* ... did not concern the 'catalyst theory.'" *Id.* at 546. Acknowledging that "if taken out of context some of the language in *Farrar* ... could be viewed as inconsistent with a 'catalyst theory,'" the court noted that "any language implicating the 'catalyst theory' was dictum" and determined that it was "not likely that the Supreme Court would overturn such a wide-spread theory without even once mentioning it, particularly when it was inapplicable to the case at hand." *Id.* at 547. The court added that "[t]he view that the 'catalyst theory' was *sub silentio* abrogated in *Farrar* is incompatible with the Supreme Court's approach to attorney's fees under section 1988" because the Court "has consistently emphasized that it is the ends, not the means, that are determinative both of whether a plaintiff has prevailed and of the appropriate amount of fees." *Id.* at 547–48. The court found that requiring a party to have a court judgment before becoming a prevailing party would provoke prolonged litigation in that parties would be encouraged "to continue lawsuits in which they have already effectively achieved their goals, simply to obtain 'prevailing party' status." *Id.* at 548. The court added that "requiring plaintiffs to proceed with the litigation notwithstanding defendants' accession to plaintiffs' position would be inconsistent with plaintiffs' obligations under Rule 11." *Id.* Finally, the court suggested that "from a policy standpoint, if defendants could deprive plaintiffs of

attorney's fees by unilaterally mooting the underlying case by conceding to plaintiffs' demands, attorneys might be more hesitant about bringing these civil rights suits, a result inconsistent with Congress' intent in enacting section 1988." *Id.* The Third Circuit held that "the language in *Farrar* about the need to demonstrate a 'consent decree, enforceable judgment or settlement' ... does not speak to those cases where causation of a significant benefit sought by the lawsuit is shown through the 'catalyst theory.'" *Id.* at 550.

The Second Circuit found that the language in *Farrar* that arguably eliminates the use of the catalyst test "appears in the segment of the opinion that discusses the particular award in that case: a jury verdict resulting in a final judgment," but noted that earlier language in the opinion arguably continues to support the catalyst test. *Marbley v. Bane,* 57 F.3d 224, 234 (2d Cir. 1995). The court added that "most courts have—either expressly or implicitly—affirmed the continued viability of the 'catalyst' theory of recovery of attorney's fees." *Id.* The Second Circuit then held that "*Farrar* does not eviscerate the long-standing doctrine that a plaintiff who has obtained at least some part of what he sought in bringing the suit may be considered a prevailing party and may therefore seek an award of attorney's fees.... Victory can be achieved well short of a final judgment (or its equivalent): 'if the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed.'" *Id.* (citing *Hewitt,* 482 U.S. at 761, 107 S.Ct. 2672).

The Seventh Circuit has also directly addressed the issue of whether the Supreme Court decision in *Farrar* "requires us to abandon our long-held rule that plaintiffs who attain the relief they seek through defendants' voluntary action can be 'prevailing parties' for purposes of the civil rights attorney's fees statute." *Zinn by Blankenship v. Shalala,* 35 F.3d 273 (7th Cir.1994). Citing *Hewitt,* 482 U.S. at 760–61, 107 S.Ct. 2672, and *Maher,* 448 U.S. at 129, 100 S.Ct. 2570, the Seventh Circuit noted that "even the

Supreme Court has recognized that fees can be appropriately awarded when a suit has been mooted due to the defendant's voluntary action." *Zinn,* 35 F.3d at 274. The Seventh Circuit found "it implausible that the Supreme Court meant to abolish a rule employed by nearly every circuit and previously recognized by the Court itself as 'settled law,' without expressly indicating that it was doing so" and further found that "any possible doubt about the Court's intent is put to rest ... by the fact that the same passages that have been read to preclude the award of fees when defendants have acted voluntarily are derived from and cite the very cases (*Helms* and *Maher*) in which the Supreme Court has approved that practice." *Id.* at 276. The Seventh Circuit therefore held that "plaintiffs who attain the relief they seek through defendant's voluntary action may qualify for fees by way of the catalyst theory." *Id.*

Finally, the Ninth Circuit has directly addressed the issue of whether the language in *Farrar* "precludes a catalyst theory." *Kilgour v. City of Pasadena,* 53 F.3d 1007, 1010 (9th Cir.1995). The court acknowledged that the "Fourth Circuit has held that a catalyst theory is no longer available to establish a plaintiff's status as prevailing party," but added that "at least five other circuits have specifically held that the catalyst test survives *Farrar.*" *Id.* The court decided to "follow and adopt the authority indicating that *Farrar* does not preclude a catalyst test ... [as] an alternate theory for determining the prevailing party if no relief on the merits is obtained," but did not use the catalyst test to find that the plaintiff who had an enforceable stipulated judgment was a prevailing party. *Id.*

Other circuits have continued to use the catalyst test without specifically analyzing the effect of the *Farrar* decision. *See, e.g., Paris v. U.S. Dept. of Housing & Urban Development,* 988 F.2d 236, 238 (1st Cir. 1993) (Citing both *Garland* and *Farrar* for the proposition that "the court looks for some 'material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute,'" the First Circuit held that there are "two main avenues by which a party may demonstrate

the changed legal relationship": either by enjoying "bottom-line success in the litigation" or by acting "as a catalyst in causing the desired alteration."); *Pembroke v. Wood County, Tex.,* 981 F.2d 225, 230–31 and n. 27 (5th Cir.) (The Fifth Circuit found that plaintiffs were entitled to attorney's fees under a catalyst theory and noted that *Farrar* was distinguishable because it "dealt with prevailing party status and the award of attorney's fees in the contest of nominal damages"), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993); *Citizens Against Tax Waste v. Westerville City School,* 985 F.2d 255, 258 (6th Cir.1993) (After stating that, under *Farrar,* "[t]he question to answer ... is whether plaintiffs have accomplished a '*material alteration* of the legal relationship of the parties,' the Sixth Circuit held that the plaintiffs, whose case was dismissed by the court without prejudice, were prevailing parties."); *Brown v. Local 58, Intern. Broth. of Elec. Workers,* 76 F.3d 762, 771–72 and n. 7 (6th Cir.1996) (Noting that the Fourth Circuit had eliminated the catalyst theory in light of *Farrar,* that other circuits had not, and that the Sixth Circuit had used the catalyst test in other cases since *Farrar,* the Sixth Circuit analyzed the case using the catalyst test.); *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1,* 17 F.3d 260, 263 n. 2 (8th Cir.1994) (The Eighth Circuit reversed the district court's denial of attorney's fees in a case where the catalyst test provided the basis for the request for attorney's fees, noting only that "[w]e decline to extend *Farrar*'s language beyond its context of determining prevailing party status after a final determination on the merits of litigation."); *Beard v. Teska,* 31 F.3d 942, 951 (10th Cir.1994) (The Tenth Circuit acknowledged that *Farrar* could be read "as rendering any 'catalyst' theory nonviable as a basis for awarding fees for a lawyer's services that do not produce 'an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement" but added that "we—like all the other Circuits that have considered the issue or have continued to speak in catalyst terms post–*Farrar*—have not agreed with that

·reading" and analyzed the request for fees using the catalyst test.).

■ The District Courts in the Eleventh Circuit which have addressed the issue in published opinions have unanimously held that the catalyst theory is still valid after *Farrar.* In *Grinsted v. Houston County School Dist.*, 826 F.Supp. 482 (M.D.Ga.1993), the district court, without specifically discussing the continued validity of the catalyst theory after *Farrar*, awarded attorney's fees using the catalyst test. *Id.* at 485–87. In *Southeastern Fisheries Association, Inc. v. Chiles*, 876 F.Supp. 270 (S.D.Fla.1995), the court rejected the reasoning of the Fourth Circuit, and held that "[t]he sound legal analysis of the First, Third, Fifth, Eighth and Tenth Circuits, holding that the catalyst theory is the proper standard to apply in determining the issue here presented, controls." *Id.* at 271. In *W.T. v. Andalusia City Schools*, 977 F.Supp. 1437 (M.D.Ala.1997), the district court observed that the Eleventh Circuit has "long recognized a 'catalyst' test to determine if a party has prevailed where no judicial relief is obtained," *id.* at 1442; acknowledged that, although "[t]here is some division among the Courts of Appeals as to whether the 'catalyst' theory is still viable," "most Courts of Appeals still support the catalyst theory in civil rights litigation," *id.;* added that "[t]he Eleventh Circuit has not yet ruled on the fate of the catalyst theory after *Farrar,*" *id.;* and concluded "that the catalyst theory survives *Farrar* in the Eleventh Circuit," *id.* at 1443. Additionally, "and perhaps most importantly," the court noted that in the Eleventh Circuit, where a prior decision of the court "has been weakened, but not overruled, by a Supreme Court decision, prior panel precedent must be followed." *Id.* (quoting *United States v. Smith,* 122 F.3d 1355, 1359 (11th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 614, 139 L.Ed.2d 500 (1997)). "Because the language in the *Farrar* opinion only weakened, if anything, circuit precedent for the catalyst test, that precedent is still binding." *Id.*

This Court agrees with the majority of the courts that have considered that effect of *Farrar* on the catalyst theory: "it is not likely that the Supreme Court would over-turn such a wide-spread theory without even once mentioning it, particularly when it was inapplicable to the case at hand." *Baumgartner,* 21 F.3d at 547.

In this Circuit, the "catalyst test of prevailing party requires showing that the lawsuit is a causal link that prompted some remedial action." *Fields v. City of Tarpon Springs,* 721 F.2d 318, 321 (11th Cir.1983).

■ In this case, Plaintiff sought a declaratory judgment that Defendant's affirmative action program relating to contracting was illegal and an injunction against the enforcement or application of the existing program or "any other ordinance, regulation, policy, practice, custom or usage which requires or permits the allocation of contracts let by Defendant or any of its agencies or any part of such contracts based in whole or in part on race, gender, ethnicity, national origin or color." The evidence shows that, as a result of the filing of this suit, Defendant suspended the use of its affirmative action program pending a disparity study. For purposes of an award of attorney's fees pursuant to § 1988, Plaintiff has met the threshold determination and is a "prevailing party" under the catalyst test.

II. *Reasonable Fee*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* "The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id.* at 434.

■ "A request for attorney's fees should not result in a second major litigation." *Id.* at 437, 103 S.Ct. 1933. "Ideally, of course, litigants will settle the amount of a fee." *Id.* "Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and docu-

menting the appropriate hours expended and hourly rates." *Id.* "[W]here the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir.1988).

## A. Reasonable Hourly Rate

 "The first step is to ascertain a rate to charge for the attorney's representation." *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir.1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Id.* "It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* "Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Id.* "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* "The parties ought to provide the court with a range of market rates for lawyers of different skill levels (perhaps as measured by quality and quantity of experience) involved in similar cases with similar clients, so that the court may interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar." *Id.* at 1300.

"Legal skill may be a function of experience, but that is not always the case." *Id.* "[L]egal skill has no intrinsic value unless it is used to further the client's interest, which is to obtain a just result quickly and economically." *Id.* "From the beginning *and throughout a case,* expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model." *Id.* (emphasis added).

## B. Hours Reasonably Expended

 "The second step requires a determination as to the number of reasonable hours expended by counsel." *Duckworth,* 97 F.3d at 1397. "While exercising proper 'billing judgment,' the party should [exclude] those hours that would be unreasonable to bill a client or opposing counsel without reference to skill, reputation or experience." *Id.* (citing *Norman,* 836 F.2d at 1301). The court should deduct excessive, unnecessary, and redundant hours and time spent upon "discrete and unsuccessful claims" from the calculations. *Id.* (citing *Norman,* 836 F.2d at 1301–02). "Redundant hours generally occur where more than one attorney represents a client." *Norman,* 836 F.2d at 1301–02. "[A]ttorney's fees incurred [in a civil rights case] after a pretrial settlement offer, where the judgment recovered by the plaintiff is less than the offer" are deemed unnecessary and should not be charged to the defendant. *Riverside v. Rivera,* 477 U.S. 561, 580, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (citing *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985)). "Because reducing the hours claimed requires the court's precision, the law in this circuit commands that both the proof of the hours spent in litigation and any corresponding objections posed be voiced with a similar exactitude." *Duckworth,* 97 F.3d at 1397 (citing *Norman,* 836 F.2d at 1301).

## C. Other Considerations

The lodestar calculation "provides an objective basis on which to make an initial estimate of the value of a lawyer's services ... but does not end the inquiry." *Cullens v. Georgia Dept. of Transp.,* 29 F.3d 1489, 1492 (11th Cir.1994) (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.*

 "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman,* 836 F.2d at

1302. "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.* Where a plaintiff has raised several claims and is successful on some and not on others, the court should consider both the overall level of success and whether the unsuccessful claims were related to the claims on which the plaintiff succeeded in determining whether to award attorney's fees for hours reasonably expended on the unsuccessful claims. *Riverside v. Rivera,* 477 U.S. 561, 568, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). " 'Time spent pursuing unsuccessful claims that were clearly without merit should be excluded' from the lodestar amount." *Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 (11th Cir.1987). "Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." *Norman,* 836 F.2d at 1302.

▆▆▆ Because compensation received several years after the services were rendered— as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, "[a]n adjustment for delay in payment is ... an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988." *Missouri v. Jenkins,* 491 U.S. 274, 283–84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). "[W]here there is [a risk of delay in the receipt of payment by counsel] the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *Norman,* 836 F.2d at 1302.

▆▆▆ "Attorney's fees may be denied where 'special circumstances would render such an award unjust.' " *Martin v. Heckler,* 773 F.2d 1145, 1149 (11th Cir.1985) (quoting *Hensley,* 461 U.S. at 429, 103 S.Ct. 1933). "Defendants bear the burden of proving the existence of special circumstances." *Id.* at

1150. "Defendants' good faith, lack of culpability, or prompt remedial action do not warrant a denial of fees under the special circumstances preclusion." *Id.* "[I]t is not a special circumstance making an award of attorney's fees unjust to assert simply that the defendants, in their own good time, would eventually have gotten around to curing the problem." *Id.* at 1151.

### D. *Application of Legal Principles*

In the motion for attorney's fees, Plaintiff sought fees for the work of Mr. Proctor in the amount of $14,080.00 (51.2 hours at $275 per hour), fees for Mr. Hutchins in the amount of $3,093.75 (24.75 hours at $125 per hour), fees for Ms. Dutcher in the amount of $7,957.00 (45.9 hours at $175 per hour), and expenses of $1,426.94 for a total award of $26,557.69.[1] In a supplemental affidavit filed with the reply brief, Ms. Dutcher claims additional fees of $4,039.00 (23.08 hours at $175 per hour) and additional expenses of $393.99 for a grand total of $30,990.68.

Initially, the Court notes that neither party has provided sufficient evidence to establish the "prevailing market rates in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. In addition to the affidavits of the attorneys performing the work, Plaintiff submitted only one affidavit stating that the rates sought are within the range of rates charged by his firm. Although objecting to the rates requested, Defendant provided no evidence to support its allegations that the requested rates are unreasonable. "[W]here ... there is a lack of documentation or testimonial support the court may make the award on its own experience." *Norman,* 836 F.2d at 1303.

▆▆▆ In his November 19, 1997, letter regarding settlement, Mr. Proctor stated to Mr. Walbert that his hourly rate was $300.00, that Mr. Hutchins' hourly rate was $125.00, and that Ms. Dutcher's hourly rate was $170.00. In his affidavit submitted to this

---

1. These numbers vary from the totals stated in the various affidavits. The Court calculated the number of hours documented on the time sheets for each attorney and multiplied that number by the requested hourly rate for each attorney.

Court, Mr. Proctor stated that his hourly rate was $250 from 1995 through 1997 but increased to $275 as of January 1, 1998, and that Mr. Hutchins' hourly rate was $125.00. Ms. Dutcher stated in her affidavit that the "reasonable hourly rate" for her time was $175.00. The Court notes, however, that in calculating her requested fees for work prior to January 1, 1998, Ms. Dutcher used an hourly rate of $170.00. As this case is not the sort of "complex civil rights litigation" where "compensation is received several years after the services were rendered," *Jenkins,* 491 U.S. at 283–84, 109 S.Ct. 2463, it is not necessary to use current billing rates rather than historical billing rates. The reasonable hourly rates are those actually charged by the attorneys: for Mr. Proctor the reasonable rate is $250 per hour[2]; for Mr. Hutchins the reasonable rate is $125 per hour; and for Ms. Dutcher the reasonable rate is $170 per hour for work prior to 1998 and $175 per hour for work during 1998.

■ Although Plaintiff, citing *Hensley* and other cases, contends that a party who prevails on one or more claims may recover fees for legal services on unsuccessful claims contained in the same case, no authority has been cited, and none has been found, which permits recovery for time spent on a completely different, though related, case. Rather, the Eleventh Circuit, in awarding attorney's fees for work in one civil rights case, declined to consider the request of fees for work performed in a separate but parallel case, noting instead that "[w]hether the Wilks class is entitled to attorneys' fees for work done in the reverse-discrimination case is an issue that should be decided *in that case.*" *Ensley Branch, N.A.A.C.P. v. Seibels,*

31 F.3d 1548, 1582–83 (11th Cir.1994) (emphasis added). Plaintiff may not recover in this case for time spent and expenses incurred in the related case filed against the individual commissioners. The Court has therefore deducted 3.4 hours from the time documented by Mr. Proctor, 12.25 hours from the time documented by Mr. Hutchins, and 3.2 hours from the time documented by Ms. Dutcher for 1997.[3]

Plaintiff contends its attorneys are entitled to full compensation because they achieved excellent results and that the "lawsuit was completely successful for Plaintiff." Any success achieved by this case, however, was achieved at the time the Commissioners voted to suspend the affirmative action programs on October 28, 1997. It was therefore unnecessary to continue to litigate the merits of the case beyond that time. Any time spent on matters relating to Defendant's motion to dismiss was unreasonable. The Court has therefore deducted 15.8 hours from the time documented by Mr. Proctor, 1.1 hours from the time documented by Mr. Hutchins, and .5 hour from the time documented by Ms. Dutcher for 1997.

■ During settlement discussions, Mr. Walbert told Mr. Proctor that, although he had no authority to offer a specific amount for attorney's fees to settle the case, he believed Defendants would voluntarily pay fees of about $10,000.[4] In response, Mr. Proctor overstated his hourly rate, overstated the number of hours that had been expended on this case,[5] and, based on his overstated figures, set a "firm" amount at $20,000, refusing to even consider a lesser

---

2. All of the time documented for Mr. Proctor was in 1997, prior to the time he increased his billing rate.

3. Where documented time applies to both this case and the companion case (for example, Mr. Hutchins' time on 10/23/97 to "Assemble complaints with exhibits"), the Court allocated half of the time to this case and half to the companion case.

4. Mr. Proctor states by affidavit that "[a]lthough I did discuss settlement of Plaintiff's attorney's fees with Defendant's counsel on several occasions, Defendant never made any offer whatsoever to settle fees in this matter." This statement is

not in conflict with Mr. Walbert's statement that "I indicated to Mr. Proctor that, while I had no monetary authority at that time, it was my opinion that the County would voluntarily pay fees in the neighborhood of $10,000.00."

5. The total hours spent on this case prior to November 19, 1997, was calculated by totaling the number of hours documented and deducting the number of hours spent on the companion case. Mr. Proctor's letter stated that he had "backed out of our fees and expenses any incremental time relating to the complaint against the commissioners individually."

amount in settlement. This demand was unreasonable. Because of Plaintiff's unreasonable and non-negotiable fee demand, any attempts to negotiate a settlement were doomed from the start, and the time spent on them was therefore unreasonable. Further, Plaintiff unnecessarily expanded these proceedings by making an overstated and unreasonable fee demand and then refusing to settle the case because Defendant would not accede to the demand. It would be unjust to allow attorney's fees for any time spent on matters relating to the motion for attorney's fees. The Court has therefore deducted 5.1 hours from the time documented by Mr. Proctor, 1.2 hours from the time documented by Ms. Dutcher for 1997, and 53.88 hours from the time documented by Ms. Dutcher for 1998.

The number of hours reasonably expended by Mr. Proctor was 26.9; the number of hours reasonably expended by Mr. Hutchins was 11.4; the number of hours reasonably expended by Ms. Dutcher in 1997 was 10.2. The loadstar amount therefore is $9,884.00 (26.9 hours times $250 per hour for Mr. Proctor; 11.4 hours times $125 per hour for Mr. Hutchins; and 10.2 hours times $170 per hour for Ms. Dutcher). Having taken all of the special circumstances into account in determining the number of hours reasonably expended on this litigation, the Court does not need to adjust the loadstar either upwards or downwards.

III. *Reasonable Expenses*

▋▋▋▋ "Reasonable attorneys' fees under the Act must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation." *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1190 (11th Cir.1983). "The issue of which expenses are properly chargeable to the defendants under section 1988 is not settled by reference to any pre-determined list of items," such as that found in 28 U.S.C. § 1920. *Id.* at 1189. "It is governed by the purposes of the governing statute and the nature and context of the specific litigation." *Id.* "The purpose of the Attorney's Fee Awards Act is to ensure the effective enforcement of the civil rights laws, by making it financially feasible to litigate civil rights violations." *Id.* "Because civil rights litigants are often poor, and judicial remedies are often non-monetary, the Act shifts the costs of litigation from civil rights victim to civil rights violator." *Id.* "[T]he recoverability of costs is determined by the necessities of the case; even relatively large or unusual costs may be taxed when they are reasonably incurred; and there is no bar to complete recovery." *Id.* at 1191. "[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Id.* at 1192. "As is true in other applications of section 1988, the standard of reasonableness is to be given a liberal interpretation." *Id.* "The guideline on what is includable must be that which is appropriate in the context of the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Id.*

In the motion for attorney's fees and expenses, Plaintiff sought expenses in the amount of $1,426.94: $300.00 for "Filing Fees"; $205.00 for "Service Fees"; $133.19 for "Courier (x2)"; $122.34 for "Westlaw Research"; $520.23 for "Postage/Photocopies"; and $17.32 for "Parking & Mileage." There is no indication as to when these expenses were incurred, for which of the two cases they were incurred, or for which motion they were incurred. Other evidence in the record shows that a $150.00 filing fee was paid for this case. That fee is recoverable. The record shows that process servers were used to serve the complaint on Defendant at the October 18, 1997 meeting of the DeKalb County Commission. The record further suggests, however, that the process servers remained at the meeting, ready to serve the complaint in the companion case if necessary. Only half of the $205.00 Service Fees ($102.50) is recoverable. The only research reflected on the time sheets relates to the motion to dismiss for which Plaintiff is not entitled to recover attorney's fees. The Westlaw Research fees of $122.34 are not

recoverable. As it is impossible to determine what matters the other expenses relate to, they are not recoverable. In a supplemental statement, Plaintiff sought an additional $393.99 for legal research on Westlaw. The supplemental amount was for researching issues relating to the motion for attorney's fees and is not recoverable for the same reasons attorney time spent on the motion is not recoverable. Plaintiff is entitled to recover $252.50 in expenses relating to this litigation.

## CONCLUSION

Plaintiff is the prevailing party in this case and, as such, is entitled to recover reasonable attorney's fees and expenses from Defendant. Plaintiff is entitled to recover $9,884.00 in attorney's fees and $252.50 in expenses. The Court therefore GRANTS Plaintiff's motion for attorney's fees and expenses in the amount of $10,136.50 but DENIES Plaintiff's motion as to all other fees and expenses.